COMMONWEALTH *vs.* STANLEY DESPER
(and a companion case[1]).

Suffolk. October 6, 1994. - December 14, 1994.

Present: LIACOS, C.J., WILKINS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Probable Cause. Constitutional Law,* Search and seizure, Probable cause.
*Search and Seizure,* Probable cause, Affidavit.

An affidavit in support of a search warrant for a certain apartment, based
  on personal observations of a confidential informant who had made two
  controlled purchases of narcotics under the supervision of police officers
  at the premises in question, provided probable cause for the issuance of
  the warrant where the controlled buys, in the circumstances, estab-
  lished the reliability of the informant. [168-171] LYNCH, J., concurring.
  LIACOS, C.J., dissenting.

INDICTMENTS found and returned in the Superior Court
Department on December 3, 1992.

Pretrial motions to suppress evidence were heard by *Su-
zanne DelVecchio,* J.

An application for leave to prosecute an interlocutory ap-
peal was allowed by *Wilkins,* J., in the Supreme Judicial
Court for the county of Suffolk and the appeal was reported
by him.

*Susan Underwood,* Assistant District Attorney, for the
Commonwealth.

*Patricia A. Wynn* for Ricardo Gomes.

*Salvatore F. DiMasi (Frances L. Robinson* with him) for
Stanley Desper.

GREANEY, J. The Commonwealth challenges an order of a
judge of the Superior Court, suppressing evidence seized
from apartment no. 3, 91 East Brookline Street in Boston. A

---

[1]Commonwealth *vs.* Ricardo Gomes.

single justice of this court allowed the Commonwealth's application for leave to appeal from the suppression order and referred the case to the full court. See Mass. R. Crim. P. 15 (b) (2), as amended, 397 Mass. 1226 (1986). We reverse the order allowing the defendants' motions to suppress.

On October 30, 1992, Detective Joseph Driscoll of the Boston police department applied for a warrant to search apartment no.3 at 91 East Brookline Street. The affidavit filed in support of the warrant application furnished the following information. Driscoll had been a police officer "for a number of years" and "had been involved in hundreds of arrest[s] involving violations of [G. L. c. 94C, the Commonwealth's Controlled Substances Act]." A confidential informant told Driscoll that on numerous occasions in the past month the informant had been present in apartment no. 3, on the second floor of 91 East Brookline Street in Boston, a four-story brick townhouse. On those occasions, the informant had seen two men, one known to the informant as Ricardo Gomes and the other known, variously, as Stanley Desper or William Darrah, selling cocaine. The informant described Gomes as being about forty-five years old, five feet, eight inches in height and weighing around 150 pounds. He described Desper as being sixty-two years old, with gray hair in a ponytail. According to the informant, the cocaine, measured out into plastic bags, was kept in two plastic bowls. On a number of occasions, the informant watched Gomes and Desper give cocaine to individuals in exchange for money. The informant had observed both men carrying guns.

The affidavit further stated that within the week preceding Driscoll's warrant application, an anonymous person placed a telephone call to the drug unit and stated that one Ricardo Gomes and a man known as Stanley were selling drugs from an apartment on the second floor of the house at 91 East Brookline Street in Boston. According to the caller, "Stanley" drove a red car with the Massachusetts registration number 777AGC, and lived at 5 Adamson Street in the Allston section of Boston. The anonymous caller stated that Ricardo always slept with a firearm beside him.

Acting on the information he had received from the informant, Driscoll undertook surveillance of the East Brookline Street townhouse. He observed a number of people enter the building and leave it a short time later. One of those people he knew as Ricardo Gomes, whom Driscoll had arrested in August, 1981, for possession of cocaine with intent to distribute. Driscoll also observed a man in his sixties with a gray ponytail, get out of a red car with registration number 777AGC. He confirmed that the automobile was registered to a person residing at 5 Adamson Street in Allston. Driscoll checked the criminal records of Ricardo Gomes and Stanley Desper. Both men had been convicted for violations of the Controlled Substances Act. Desper had also been arrested for a firearms violation and for assault with intent to murder. His record indicated that he was also known as William Darrah, and that he had given an address of 5 Adamson Street, Allston, when arrested.

Within two weeks prior to the making of the affidavit, Driscoll arranged with the informant "to make a controlled buy of cocaine." Driscoll watched the informant enter the building at 91 East Brookline Street. The informant left the building a short time later and gave the detective a plastic bag containing a white powder, which the informant said he had purchased from Desper. A field test showed the powder to be cocaine. Within forty-eight hours prior to making the affidavit, Driscoll again sent the informant "into 91 East Brookline to make a controlled buy." He again watched the informant enter the building at 91 East Brookline Street and exit a short time later. Again, the informant turned over a plastic bag containing a white powder which field-tested positive for cocaine.

Based on the information supplied in the affidavit, Driscoll requested, and was issued, a no-knock warrant for apartment no. 3, on the second floor of the building at 91 East Brookline Street in Boston. During the ensuing search, the police seized twenty-seven bags of cocaine, drug-related paraphernalia, over $3,000 in cash, and a handgun. The defendants, Stanley Desper (also known as William Darrah) and Ricardo

Gomes, were charged with trafficking in cocaine, in violation of G. L. c. 94C, § 31 (1992 ed.), conspiring to traffic in cocaine, also in violation of G. L. c. 94C, § 31, and unlawful possession of a firearm, in violation of G. L. c. 140, § 129C (1992 ed.). As previously noted, a judge of the Superior Court allowed the defendants' motions to suppress.

The legal principles applicable to issuance of a search warrant in the Commonwealth are well established, and were recently repeated in *Commonwealth v. Warren*, 418 Mass. 86, 88-89 (1994). When an application for a warrant depends in significant part on information provided by a confidential informant, the affidavit must "apprise the magistrate of (1) some of the underlying circumstances from which the informant concluded that contraband was where he claimed it was (the basis of knowledge test), and (2) some of the underlying circumstances from which the affiant concluded that the informant was credible or the information reliable (the veracity test)." *Id.* at 88, citing *Commonwealth v. Upton*, 394 Mass. 363, 375 (1985), and *Commonwealth v. Parapar*, 404 Mass. 319, 321 (1989). Each of these tests must be satisfied independently, but "police corroboration of an informant's detailed tip can compensate for deficiencies in either or both prongs of the standard, and thus satisfy the [Massachusetts Declaration of Rights] art. 14 probable cause requirement." *Commonwealth v. Warren*, *supra* at 89.

The defendants concede that the basis of knowledge test is satisfied. Driscoll's informant personally observed the defendants carrying firearms and selling drugs in the apartment at 91 East Brookline Street. See *id.* See also *Commonwealth v. Perez-Baez*, 410 Mass. 43, 45 (1991); *Commonwealth v. Carrasco*, 405 Mass. 316, 321 (1989).

Next we examine whether the veracity test is satisfied. The affidavit did not contain the usual information from which it reasonably could be inferred that the informant was credible. It did not state, for example, that the informant had supplied information to the police in the past which had led to arrests, seizures of contraband, pending cases or convictions. See,

e.g., *Commonwealth* v. *Mejia*, 411 Mass. 108, 111-114 (1991); *Commonwealth* v. *Perez-Baez*, *supra* at 45-46.

The anonymous telephone call to the police station did not corroborate the informant's statements in the "significant detailed respects" required when an anonymous tip is relied on for this purpose. See *Commonwealth* v. *Nowells*, 390 Mass. 621, 624-627 (1983). There is no assertion in the affidavit that the anonymous caller had been in the apartment. Thus, the source of his information may have been hearsay. To the extent that it merits consideration, see *id.* at 627, the telephone call failed to provide the sort of idiosyncratic detail that would effectively corroborate and lend credibility to the informant's assertions. See *Commonwealth* v. *Santana*, 411 Mass. 661, 665 (1992).

Driscoll's independent investigation yielded some additional information competent to bolster the reliability of the informant's tip. However, in the absence of further detail as to the number of visitors and the length of their visits, the statement that an unspecified "number of persons" were observed entering a four-story, multi-apartment building and leaving it "a short time later" does not tend to prove that a person or persons in the building are engaged in criminal behavior. See *Commonwealth* v. *Byfield*, 413 Mass. 426, 430 n.7 (1992). Contrast *Commonwealth* v. *Valdez*, 402 Mass. 65, 71 & n.4 (1988) (police observation of "known drug users entering [building] and remaining for three to five minute periods" bolstered informant's credibility). The defendants' criminal histories, as recited by Driscoll, consisted of several arrests (outcome uncertain) and convictions of uncertain vintage, and could "not be given weight in a probable cause determination." *Commonwealth* v. *Melendez*, 407 Mass. 53, 59 (1990). See *Commonwealth* v. *Allen*, 406 Mass. 575, 579 (1990) (only if defendant's criminal history is recent and similar to crime charged may it be factored into probable cause determination as corroboration of informant's veracity). Driscoll's investigation confirmed the defendants' identities and their presence at the 91 East Brookline Street address, but "verified no predictive details that were not eas-

ily obtainable by an uninformed bystander." *Commonwealth v. Lyons*, 409 Mass. 16, 21 (1990).

At issue is whether the statement, that the informant made two "controlled buys" from the defendants, can compensate for the affidavit's otherwise deficient showing on the point of the informant's veracity. "A controlled purchase of narcotics, supervised by the police, provides probable cause to issue a search warrant." *Commonwealth v. Warren*, 418 Mass. 86, 89 (1994), citing *Commonwealth v. Luna*, 410 Mass. 131, 134 (1991). Generally, a "controlled buy" has, at a minimum, these components: (1) a police officer meets the informant at a location other than the location where is it suspected that criminal activity is occurring; (2) the officer searches the informant to ensure the informant has no drugs on his person and (usually) furnishes the informant with money to purchase drugs; (3) the officer escorts or follows the informant to the premises where it is alleged illegal activity is occurring and watches the informant enter and leave those premises; and (4) the informant turns over to the officer the substance the informant has purchased from the residents of the premises under surveillance. See *Commonwealth v. Warren, supra* at 89-90; *Commonwealth v. Tshudy*, 34 Mass. App. Ct. 955, 956 (1993); *Commonwealth v. Benlien*, 27 Mass. App. Ct. 834, 838 (1989). See also 1 W.R. LaFave, Search and Seizure § 3.3(f), at 686-687 (2d ed. 1987 & Supp. 1994), and the many cases cited therein.[2]

Here, the affiant twice watched the informant enter the building, and leave a short time later with a substance that tested positive for cocaine. The informant named the individuals from whom the substance had been purchased. The principal difficulty with this "controlled buy" is that the affiant did not state that the informant was searched for drugs before the informant entered the building at 91 East Brook-

---

[2]In some "controlled buy" cases, the informant has been given marked money with which to purchase contraband, see, e.g., *Commonwealth v. Olivares*, 30 Mass. App. Ct. 596, 597 (1991); *State v. Wahl*, 450 N.W.2d 710, 712 (N.D. 1990), or fitted with a body recorder. See, e.g., *United States v. Jimenez*, 894 F.2d 1, 5 (1st Cir. 1990); *State v. Wahl, supra*.

line Street.[3] The defendants argue that in these circum-
stances the informant might have obtained the cocaine from
a source other than the defendants. The result, they contend,
"is a buy that relies on the veracity of an informant whose
veracity has not otherwise been proven." Gomes further ar-
gues that this is particularly problematic in a case in which
the affiant watches the informant enter a particular building,
but cannot confirm that the informant has entered the apart-
ment in which it is alleged that the defendants are engaged
in criminal activity.

It was observed in *Commonwealth* v. *Warren, supra* at 90,
that the police were not required to risk disclosure of their
surveillance by observing the apartment in a small multi-
apartment building an informant actually enters in the
course of executing a controlled buy. Based on the informa-
tion provided by the informant, and their own observation of
the informant entering the building, the police may infer the
truthfulness of the informant's report that he entered the
premises controlled by the suspect.[4] The *Warren* case in-
volved a three-story building with three apartments. This
case involves a four-story brick townhouse. See *Common-
wealth* v. *Valdez, supra* at 71 n.4 (police surveillance "bol-
ster[ed] informant's [veracity] even though the police ob-

---

[3]Gomes also contends that there is nothing in the affidavit from which
the examining magistrate could conclude that the informant was accompa-
nied or escorted to 91 East Brookline Street. We disagree. Driscoll stated
in the affidavit that he had twice "sent" the confidential informant into the
building to make controlled buys and had on both occasions observed the
informant enter and exit the building. It is reasonable to infer from this
language that Driscoll accompanied or followed the informant to the build-
ing. Language used in an affidavit should not be subjected to "hypercriti-
cal analysis." *Commonwealth* v. *Blake*, 413 Mass. 823, 827 (1992). See
*Commonwealth* v. *Valdez*, 402 Mass. 65, 71 (1988) (affidavit must be read
in "commonsense manner").

[4]The judge's order allowing the defendants' motions to suppress was is-
sued without benefit of this court's decision in *Commonwealth* v. *Warren*,
418 Mass. 86 (1994). In allowing the motions, she relied as much on the
fact that the police had not "even verified which apartment the [inform-
ant] entered at 91 East Brookline Street" as on the fact that the informant
had not been searched prior to the supervised purchase of narcotics.

served only the building's main entrance and not the defendant's second floor apartment"). In *United States* v. *Garcia,* 983 F.2d 1160, 1167 (1st Cir. 1993), a case factually similar to the *Warren* case, the United States Court of Appeals for the First Circuit observed: "[T]he defendant's argument . . . was that . . . the informant might have stashed cocaine elsewhere in the building out of sight of the detective. This possibility, defendant posits, undercuts the reliability of the informant. Although defendant's argument is *possible,* it is not *probable*" (emphasis added). Similarly, the defendants' position amounts to a contention that, because the informant who purchased drugs from Desper was not searched before making that purchase, it is possible that the informant arrived at his meeting with Driscoll with cocaine on his person. It is possible that this occurred, but it is not at all probable.

Clearly, the affidavit in this case was not a model of its kind. When a police officer relies on a "controlled buy" to compensate for otherwise deficient information furnished by a confidential informant, the steps customary in a controlled buy should be taken, see *Commonwealth* v. *Tshudy, supra,* and that information should be described in detail to the magistrate who must assess whether the art. 14 probable cause requirements have been met. See 1 Lafave, Search and Seizure, *supra* at 686-687, quoting *State* v. *Barrett,* 132 Vt. 369 (1974) ("The purpose of the search of the informer and his being escorted to the place of purchase was to eliminate both as much as possible of the hearsay aspects of the search warrant request and to reduce the reliance on 'veracity' to a minimum").

Nonetheless, we conclude that the probable cause requirements were met in this case. "In dealing with probable cause . . . we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men . . . act." *Commonwealth* v. *Hason,* 387 Mass. 169, 174 (1982), quoting *Brinegar* v. *United States,* 338 U.S. 160, 175 (1949). *Commonwealth* v. *Warren, supra* at 86. An informant who undertakes

to purchase narcotics under the supervision of a police officer must realize that he may be searched (in fact, is likely to be searched) before he enters a suspect's premises. An informant would be unlikely to risk the consequences, including possible arrest, entailed by arriving at a prearranged meeting with a police officer with narcotics on his person. See *Commonwealth* v. *Richardson,* 37 Mass. App. Ct. 482, 486-487 (1994). Based on the information furnished by Driscoll, who, it will be remembered, stated that he "had been involved in hundreds of arrest[s] involving violations of [G. L. c. 94C]," we think the magistrate who authorized the warrant could reasonably conclude that this supervised purchase of narcotics was sufficient to established the reliability of the informant, thus satisfying the standards of *Commonwealth* v. *Upton, supra.*[5]

The order allowing the defendants' motions to suppress is reversed and the cases are remanded to the Superior Court for further proceedings.

*So ordered.*

---

[5]Relying on *United States* v. *Rodgers,* 732 F.2d 625 (8th Cir. 1984), and *United States* v. *Schmidt,* 662 F.2d 498 (8th Cir. 1981), the defendant Desper argues that use of the term "controlled buy" in an affidavit should not give rise to an inference that an informant was searched prior to entering a suspect's premises. We agree that such an inference should not be drawn. It was observed by the Appeals Court in *Commonwealth* v. *Tshudy,* 34 Mass. App. Ct. 955, 956 (1993), that there are "usual steps" to a controlled buy. It is clear, however, that a variety of procedures are employed, and we do not think that any missing step of this investigatory tactic not described in an affidavit should be supplied by inference. In this case, because the informant's activities were supervised by the police, the magistrate could find probable cause without drawing such an inference.

In the case of *United States* v. *Schmidt, supra,* the affidavit supporting the warrant application represented that the informant had made a "controlled buy" within the last seventy-two hours. The affidavit was silent on the procedures employed which qualified the informant's purchase of narcotics as a "controlled buy." It did not appear from the affidavit that the police had participated in, or supervised, the informant's activities. Without referring specifically to the affidavit's mention of a "controlled buy," the court in *Schmidt* concluded that there was insufficient corroboration of the information supplied by the informant. *Id.* at 503. In this case, of course, the informant's activities were monitored by the police.

LYNCH, J. (concurring). Although I agree with the court that the "controlled buy" was a sufficient basis to establish the reliability of the informant, I write separately because I conclude that the police officer's independent investigation and the anonymous telephone call were also sufficient to corroborate the informant's veracity. We have recognized that unnamed informants' statements corroborating each other in significant respects, particularly when referring to criminal conduct, could establish the veracity of the informants. *Commonwealth* v. *Nowells*, 390 Mass. 621, 627 (1983). See *Williams* v. *Maggio*, 679 F.2d 381, 391 (5th Cir. 1982). Here, the anonymous telephone call corroborates the informant's assertion that drugs were being sold by two men, Ricardo Gomes and a man named "Stanley" (referred to as Stanley Desper by the informant), from a second-floor apartment located at 91 East Brookline Street in Boston. The information obtained from the telephone call and the informant's tip was further corroborated by independent police investigation, which confirmed the names of the two individuals, the correct address of the apartment, the exact description of Desper, his Allston address, and the automobile he was driving. *Commonwealth* v. *Upton*, 394 Mass. 363, 376 (1985). The officer also stated that he had personal knowledge of Gomes because he had arrested him on a prior occasion for possession of cocaine with the intent to distribute. Furthermore, the officer checked the criminal records of Gomes and Desper which revealed that they had convictions for violations of the Controlled Substances Act. The magistrate could have believed, therefore, that the informant's veracity was established by information from independent sources which revealed that illegal activity was being conducted on the premises by two specific individuals known to have been convicted in the past for the same kind of crime. See *Spinelli* v. *United States*, 393 U.S. 410 (1969); *Aguilar* v. *Texas*, 378 U.S. 108 (1964). See also *Commonwealth* v. *Upton, supra* at 376.

LIACOS, C.J. (dissenting). I agree with the court that apart from an adequate description of a "controlled buy" the affidavit in this case failed to establish probable cause adequate to support a search warrant. This is so, because the reliability of the anonymous informant was not established either by the other recitations within the affidavit or by independent investigation by the police, sufficient to corroborate the informant's information. I also agree with the court that a controlled purchase of narcotics, supervised by the police, may corroborate the reliability of an informant's information sufficiently to satisfy the veracity element of the two-pronged test adopted by this court in *Commonwealth* v. *Upton*, 394 Mass. 363, 374-375 (1985). I do not, however, believe that the affidavit in this case demonstrated that there was a "controlled buy" as other cases have defined that term, essentially because there was no police supervision of the alleged "controlled buys." Accordingly, I dissent.

The court concludes that the affidavit included no information from which it reasonably could be inferred that the informant was credible, that the anonymous telephone call to the police station did not corroborate the informant's statements in the "significant detailed respects" required when an anonymous tip is relied on for this purpose, and that Detective Driscoll's independent investigation yielded very little additional information competent to bolster the reliability of the informant's tip. With all this, I agree. The issue, therefore, is whether the mere statement that the informant made two "controlled buys" from the defendants, without any description of how the police supervised the buy, can compensate for the affidavit's otherwise deficient showing on the point of the informant's veracity. The court believes that it can. I do not.

The court relies on *Commonwealth* v. *Warren*, 418 Mass. 86 (1994), in reaching its conclusion. What the court fails to acknowledge, however, is that the affidavit in *Warren* indicated that the police "made sure the informant had no drugs

or money before entering the building" to make the controlled buy. *Id.* at 90. Thus, the affidavit in *Warren* demonstrated that there was police supervision of that purchase. In contrast, the affidavit in this case provides no indication at all that the police supervised the alleged "controlled buys." We cannot determine from the affidavit whether the police searched the informant before or after the buy. We cannot determine whether the police provided the informant with marked bills to make the purchase. Indeed, we cannot know from the affidavit whether the police followed *any* of the steps customary in a controlled buy. In my view, if the court wishes to allow "controlled buys" to save otherwise deficient affidavits, it should at the very least require that the buys are in fact controlled.

A review of other Massachusetts cases relied upon by the court reveals that a mere statement that a "controlled buy" occurred has never been enough to save an affidavit that otherwise fails to show the informant's veracity. See *Commonwealth* v. *Luna*, 410 Mass. 131 (1991) (where the affidavit in the record stated that police "checked [informant's person before controlled buy] for any controlled substances, contraband, and monies," furnished informant with money to make purchase, and recorded serial numbers of those bills); *Commonwealth* v. *Tshudy*, 34 Mass. App. Ct. 955, 956 (1993) (affidavit stated that police had searched informant before the controlled buy and found no drugs on his person, and that police gave informant money to make purchase); *Commonwealth* v. *Benlien*, 27 Mass. App. Ct. 834, 838 (1989) (affidavit stated that police had searched informant before the controlled buy and found no narcotics or money on informant's person, provided informant with money to make purchase, and observed informant enter and leave defendant's apartment). See also *United States* v. *Garcia*, 983 F.2d 1160, 1166-1167 (1st Cir. 1993) (affidavit "fully described the 'controlled buy,'" stating that police searched informant before and after buy and found no contraband on his person, gave informant a sum of United States currency to make purchase, and observed informant enter and exit building).

I do not believe that a cursory mention in an affidavit of a "controlled buy," without any information to show that the police actually supervised the buy, can compensate for an affidavit's otherwise deficient showing as to an informant's veracity. At the very least, I would require that the affidavit provide some indication that the controlled buy was indeed controlled.

Not long ago, a distinguished Federal jurist, Senior Judge Hugh Bownes of the United States Court of Appeals for the First Circuit, gave a lecture at the Franklin Pierce Law Center in Concord, New Hampshire. Speaking of the interplay between the Fourth Amendment and the so-called "war on drugs," Judge Bownes traced in detail decisions of the United States Supreme Court, and other Federal courts, dealing with claims of violations of Fourth Amendment rights arising from well-intentioned law enforcement efforts to eliminate the drug trade. Concluding that these extensive and expensive efforts had not produced the desired result, Judge Bownes suggested that perhaps a major casualty of that "war" were the protections afforded our citizens by the Fourth Amendment.

This court, interpreting art. 14 of the Declaration of Rights of the Massachusetts Constitution (the model for the Fourth Amendment), has stood fast to protect the rights of Massachusetts citizens. *Commonwealth v. Upton*, 394 Mass. 363 (1985), is but one of our many decisions illustrating this point. I am saddened that in this case the court signals a possible retreat from our high standards. It does so by engaging in speculative rumination about why the affiant, whom the court describes as an experienced police officer who "had been involved in hundreds of arrest[s] involving violations of [G. L. c. 94C, the Commonwealth's controlled substances act]," *ante* at 164, did not know enough about controlled buys properly to describe one in his affidavit. The court's ruminations are without basis in the record, contrary to the motion judge's findings and, reluctantly I add, contrary to logic and experience.

I dissent.