The defendant, Kalise Fitzgerald, was convicted by a Superior Court jury of possession of class A (heroin) and class B (cocaine) substances in violation of G. L. c. 94C, § 34. The defendant now appeals, arguing that his motion to suppress was erroneously denied because the affidavit in support of the search warrant failed to demonstrate probable cause to search his motel room. The defendant specifically argues that the information relied on in the warrant affidavit was not reliable or credible as required under the Aguilar-Spinelli standard.[2] We conclude that the affidavit established probable cause and, thus, affirm.
"Because a determination of probable cause is a conclusion of law, we review a search warrant affidavit de novo." Commonwealth v. Foster, 471 Mass. 236, 242 (2015). In determining whether there is probable cause to issue a search warrant, we confine our examination to the "four corners of the affidavit in support of the warrant, and the reasonable inferences to be drawn therefrom." Id. at 241, citing Commonwealth v. O'Day, 440 Mass. 296, 297-298 (2003). Affidavits that rely on information obtained through a confidential informant must satisfy the two-pronged Aguilar-Spinelli test, which requires that the judge "be informed of (1) some of the underlying circumstances from which the informant concluded that the contraband was where he claimed it was (the basis of knowledge test), and (2) some of the underlying circumstances from which the affiant concluded that the informant was 'credible' or his information 'reliable' (the veracity test)." Commonwealth v. Upton, 390 Mass. 562, 566 (1983), quoting from Aguilar v. Texas, 378 U.S. 108, 114 (1964). "If the informant's tip does not satisfy each aspect of the test, other allegations in the affidavit that corroborate the information could support a finding of probable cause." Upton, supra, citing Spinelli v. United States, 393 U.S. 410, 415 (1969).
Here, the informant, known as CS1, provided detectives with detailed information about the defendant's drug dealing, including the type, amount, and price of the drugs that the defendant was selling, as well as specific locations, such as the motel and room number (number 416), where CS1 personally knew the defendant was selling the drugs. CS1 additionally told detectives that the defendant has "never been unable to provide CS1 with drugs." Such information permits the reasonable inference that CS1 provided the detectives with firsthand knowledge stemming from CS1's personal drug dealings with the defendant, thus satisfying the basis of knowledge prong of the Aguilar-Spinelli test.
As to the veracity prong, the warrant affidavit "did not contain the usual information from which it reasonably could be inferred that [CS1] was credible." Commonwealth v. Desper, 419 Mass. 163, 166 (1994). Similar to the affidavit in Desper, the affidavit here "did not state, for example, that [CS1] had supplied information to the police in the past which had led to arrests, seizures of contraband, pending cases or convictions." Ibid. The veracity prong, however, may nevertheless be satisfied where there is "[a] controlled purchase of narcotics, supervised by the police." Id. at 168, quoting from Commonwealth v. Warren, 418 Mass. 86, 89 (1994).
Here, detectives participated in CS1's controlled purchase of heroin from the defendant, and said purchase strictly adhered to the necessary components of a controlled buy set forth in our case law.[3] The affidavit provides that prior to the controlled buy, CS1 and CS1's vehicle were searched for money and illegal drugs. CS1 was then provided with "departmental funds to purchase heroin from [the defendant]." Detectives followed CS1 to a prearranged location that the defendant and CS1 decided on for the sale. The detectives observed the defendant leave room number 416 of a specified motel and travel directly to the prearranged location. CS1 and the defendant were observed meeting and both were followed directly after the sale-the defendant was followed as he traveled from the prearranged purchase location "directly back to room 416" where he entered, and CS1 was followed as CS1 traveled from the prearranged purchase location to a separate prearranged location to meet the detectives. CS1 gave the detectives the purchased drugs and reported that the drugs were purchased from the defendant using the police department issued funds. CS1 and CS1's vehicle were again searched and detectives were unable to find "drugs, money or contraband in CS1's possession." The drugs purchased in the controlled buy were field tested as positive for heroin.
The detailed information provided in the affidavit regarding the controlled purchase is sufficient to satisfy the veracity prong of the Aguilar-Spinelli test. See Desper, 419 Mass. at 170 ("When a police officer relies on a 'controlled buy' to compensate for otherwise deficient information furnished by a confidential informant, the steps customary in a controlled buy should be taken"). The defendant argues that the affidavit provided no information regarding a "customary so-called 'hand to hand' transaction, nor whether the meeting took place in [the defendant's] vehicle or CS1's vehicle; nor does the affidavit contain any details as to the search of CS1's vehicle prior to the alleged buy." However, CS1's vehicle was searched prior to the controlled buy and, in any event, these details are not required for a controlled buy to satisfy the veracity prong of the Aguilar-Spinelli test. In Desper, the warrant affidavit did not provide any information regarding whether "the informant was searched for drugs before ... enter[ing] the [defendant's] building," nor did the affidavit provide that detectives had observed the informant come in direct contact with the defendant during the purchase. Id. 168-169. Rather, the affidavit provided that detectives observed the informant enter the defendant's building and then emerge a short time later with a substance that tested positive for cocaine. Id. at 168. Here, the affidavit provides a similarly sufficient (if not stronger) controlled purchase, which, in addition to CS1's firsthand knowledge, provides a sufficient basis for probable cause; not only was CS1 searched prior to the controlled purchase, but also detectives directly observed CS1 meet with the defendant and thereafter followed CS1 to a location where CS1 provided the detectives with the purchased drugs.
Furthermore, because of the continuous observations of the defendant before and after the controlled purchase, it is reasonable to infer that drugs and the proceeds from the sale of drugs, specifically the departmental funds used in the controlled purchase, would be located in the motel's room number 416-the defendant did not stop elsewhere before or after the controlled sale to CS1, and CS1 had personal knowledge that the defendant conducted sales inside that room. See O'Day, 440 Mass. at 302-305 (police observations of defendant leaving his residence and proceeding directly to bar where he immediately began dealing drugs was one factor used to satisfy required nexus between defendant's residence and his drug dealing).
We conclude that the facts contained in the affidavit, and the reasonable inferences drawn therefrom, support a finding of probable cause. Thus, the motion to suppress was properly denied.
Judgments affirmed.

See Aguilar v. Texas, 378 U.S. 108 (1964) ; Spinelli v. United States, 393 U.S. 410 (1969).

"Generally, a 'controlled buy' has, at a minimum, these components: (1) a police officer meets the informant at a location other than the location where is it suspected that criminal activity is occurring; (2) the officer searches the informant to ensure the informant has no drugs on his person and (usually) furnishes the informant with money to purchase drugs; (3) the officer escorts or follows the informant to the premises where it is alleged illegal activity is occurring and watches the informant enter and leave those premises; and (4) the informant turns over to the officer the substance the informant has purchased from the residents of the premises under surveillance." Desper, 419 Mass. at 168.