After a jury trial, the defendant was convicted of possession of a firearm without a firearm identification (FID) card, unlawful possession of a large capacity feeding device, possession of ammunition without an FID card, and unlawful possession of class B, C, and D substances. On appeal the defendant challenges the denial of his motion to suppress, arguing that the search warrant affidavit did not establish probable cause to search his home. He also argues that the evidence was insufficient to prove that he knowingly possessed a large capacity feeding device. We find no error in the denial of the motion to suppress, but reverse the conviction of possession of a large capacity feeding device. The remaining judgments are affirmed.
1. Motion to suppress. The search warrant affidavit set out the following facts. In September of 2014, Yarmouth police Detective Christopher Van Ness spoke with a confidential informant, CI-2.[2] CI-2 told Van Ness that the defendant lived at 55 Tasmania Drive and that CI-2 had purchased heroin from him in the past and had seen him selling heroin to other individuals. Over the next several days, officers met with CI-2 to arrange two controlled purchases, each of which was conducted in the same manner: CI-2 called the defendant in the presence of Van Ness, who then met CI-2 at a prearranged location and searched CI-2 for money, weapons, and contraband, with negative results. After supplying CI-2 with marked currency, Van Ness and other officers followed CI-2 to 55 Tasmania Drive, where they observed CI-2 enter and exit a short time later. Officers then followed CI-2 directly to a prearranged location, where CI-2 produced a quantity of heroin and reported that the defendant had handed CI-2 the heroin in exchange for the recorded buy money. Officers searched CI-2 again for money, weapons, and contraband, with negative results.
The defendant argues that these facts are insufficient to satisfy either prong of the Aguilar-Spinelli test. See Aguilar v. Texas, 378 U.S. 108 (1964) ; Spinelli v. United States, 393 U.S. 410 (1969). But it is "[w]ithout question" that "a properly monitored controlled purchase of illegal drugs provides sufficient corroborating evidence to overcome any shortfalls in meeting the constitutional reliability requirements imposed on confidential informants." Commonwealth v. Figueroa, 74 Mass. App. Ct. 784, 787-788 (2009). See Commonwealth v. Luna, 410 Mass. 131, 134 (1991) ("Standing alone, [two controlled purchases] provided probable cause to search the house"). We reject the defendant's contention that the officers did not properly monitor the purchases because they did not follow CI-2 from the location where CI-2 called the defendant to the prearranged location where CI-2 met Van Ness. The steps taken by the officers fully complied with the established protocol. See Commonwealth v. Desper, 419 Mass. 163, 168 (1994) ; Commonwealth v. Monteiro, 93 Mass. App. Ct. 478, 482 (2018).
The defendant notes that the purchases were suggested by CI-2 and not by the police, which, he says, exacerbates the risk that CI-2 might have planted the drugs after calling the defendant. "In dealing with probable cause," however, "we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men ... act." Desper, 419 Mass. at 170, quoting Commonwealth v. Hason, 387 Mass. 169, 174 (1982). Though the scenario posited by the defendant is theoretically "possible, it is not probable." Desper, 419 Mass. at 170. The purchases were thus sufficient to establish probable cause for the issuance of the search warrant.
2. Sufficiency. While this appeal was pending, the Supreme Judicial Court held in Commonwealth v. Cassidy, 479 Mass. 527, 529 (2018), that "to sustain a conviction [of unlawfully possessing a large capacity feeding device], the Commonwealth must prove that [the] defendant either knew the ... feeding device met the legal definition of 'large capacity' or knew it was capable of holding more than ten rounds of ammunition." The defendant contends that the evidence in this case was insufficient to prove the requisite knowledge. We agree.
The police found the feeding device inside a closed ammunition box, wrapped in a bandanna together with a firearm, and resting on top of a box of bullets. Unlike in Cassidy, where the defendant had owned the firearms and magazines for a significant period of time, the only evidence in this case as to how the defendant acquired the feeding device was his statement to the officers that he "got the gun from a white boy from Harwich a few days before" but "never tried to fire it." Also unlike in Cassidy, there was no evidence that the feeding device, which was empty but capable of holding thirteen rounds of ammunition, was "noticeably larger than a magazine that holds ten rounds." Id. at 537. Nor was there evidence that the defendant had any particular familiarity with firearms. Cf. ibr.US_Case_Law.Schema.Case_Body:v1">id. (defendant "was familiar with firearms more generally, had owned other firearms in the past, and had been hunting since he was eight years old"). In light of the evidence presented, we conclude that the Commonwealth failed to prove that the defendant knew of the "large capacity" characteristics of the feeding device. See Commonwealth v. Resende, 94 Mass. App. Ct. 194, 202 (2018).
Conclusion. The judgment on the charge of unlawful possession of a large capacity feeding device is reversed, the verdict is set aside, and judgment is to enter for the defendant on that count. The remaining judgments are affirmed, and the matter is remanded for resentencing.
So ordered.
Reversed in part; affirmed in part.

The affidavit also recited information received from another confidential informant, CI-1. The motion judge found, and the Commonwealth concedes, that the information provided by CI-1 has limited value in the probable cause analysis.