NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

18-P-1371                                    Appeals Court


COMMONWEALTH  vs.  JEREMY COSTA.


No. 18-P-1371.      April 10, 2020.


Controlled Substances.  Practice, Criminal, Motion to suppress, Warrant.  Constitutional Law, Search and seizure, Probable cause.  Search and Seizure, Affidavit, Probable cause, Warrant.  Probable Cause.


This is an interlocutory appeal by the Commonwealth from an order allowing the defendant's motion to suppress evidence based on a determination that the affidavit in support of the search warrant did not establish probable cause because it failed to demonstrate the reliability of the confidential informant (CI). Recently, we affirmed an order allowing a motion to suppress involving a search in the same apartment building in which the affidavit bears remarkable similarities to the affidavit in this case.  See Commonwealth v. Ponte, 97 Mass. App. Ct. 78 (2020).

In the present case, as in Ponte, an experienced drug investigator for the New Bedford Police Department signed an affidavit in which he asserted that narcotics were being sold from a particularly identified apartment in a building located at 280 Acushnet Avenue.  Compare Ponte, 97 Mass. App. Ct. at 79. Here, as in Ponte, the investigator's affidavit indicated that he knew the CI's identity and address, but it did not indicate whether the CI had supplied accurate information in the past. Compare id.  The CI reported to the investigator that the CI had purchased narcotics from an individual in apartment 2L.  Compare id.  Also, as in Ponte, the police investigation identified a specific individual, here the defendant, Jeremy Costa, as someone who matched the CI's description of the seller.  Compare id. at 80.  The CI identified a photograph of Costa as the seller and a photograph of a woman, whom the police determined

was renting the apartment in question, as Costa's girlfriend. The police observed Costa's vehicle in the parking lot for the apartment building at 280 Acushnet Avenue. The police investigation revealed that Costa had an open criminal case, and as in Ponte, the investigation also revealed that Costa had been arraigned numerous times on charges involving narcotics. Compare id. In this case, as in Ponte, the police arranged for the CI to contact Costa by telephone for purposes of a "controlled buy." Compare id. at 79-80. The CI was searched, found to have no drugs on his or her person, and was observed to enter the front door of the building at 280 Acushnet Avenue with only the money given to the CI by the police for the purchase of narcotics. Compare id. at 80. The police observed the CI exit through the front door "[a] short time later." And, as in Ponte, the CI informed the police that the CI had purchased narcotics from the defendant inside the apartment in question and turned them over to the police. Compare id.

In Ponte, we noted that the warrant application described the building at 280 Acushnet Avenue as a "multi-unit housing structure with six floors." Ponte, 97 Mass. App. Ct. at 80. However in that case the affidavit in support of the warrant did not state the number of apartment units in the building or the number of units per floor. There, based in part on the apartment's designation as "2F," the motion judge found that there were likely at least six apartments on each floor of the building which would make it a thirty-six unit apartment building. Id. at 85. In the present case, by contrast, the affidavit includes a statement that "280 Acushnet Avenue . . . consists of 144 housing units."

One of the four essential characteristics of a properly supervised controlled buy is that the police "escort[ ] or follow[ ] the informant to the premises where it is alleged illegal activity is occurring and watch[ ] the informant enter and leave those premises." Commonwealth v. Desper, 419 Mass. 163, 168 (1994). In Ponte, 97 Mass. App. Ct. at 82-86, after reviewing prior decisions that addressed the requirement that the police observe the informant enter the target apartment in order for an otherwise controlled buy to satisfy the reliability prong of the Aguilar-Spinelli test, we concluded that the number of units in the building was a determinative consideration. See Spinelli v. United States, 393 U.S. 410 (1969); Aguilar v. Texas, 378 U.S. 108 (1964). In buildings with only a few units, an observation by the police that the informant entered the building and returned after a few minutes with a quantity of drugs may be sufficient to demonstrate that the informant

purchased the drugs from the individual that the informant described as the seller, but "the inference that the [informant] purchased the drugs from the target apartment becomes attenuated in the case of a large apartment building." Ponte, supra at 84.

In the present case, as in Ponte, the police investigation of the CI's report strengthened the suspicion that Costa was selling drugs from his apartment at 280 Acushnet Avenue, but it did not rise to the level of independent corroboration of the CI.  The controlled buy, therefore, was an essential element in the effort by the police to corroborate the CI as a reliable informant.  A controlled buy inside a large multiunit building such as the building at 280 Acushnet Avenue, which contains 144 individual apartments, does not satisfy Desper's requirement that in order to conduct a controlled buy the police must "watch[ ] the informant enter and leave those premises." Desper, 419 Mass. at 168.  In Ponte, we did not establish "a bright-line rule with respect to the required level of detail of police observations of the particular unit within a multiunit apartment building from which a controlled buy is made." Ponte, 97 Mass. App. Ct. at 86.  Rather, we adhered to precedent that requires that the affidavit in support of a search warrant "must contain sufficient details with respect to the attendant circumstances surrounding the controlled buy." Id.  These include "the layout of the building, the number of apartments, the location of the defendant's apartment, the details of the interior of the apartment, where the defendant stored the drugs in the apartment, and the feasibility (or unfeasibility) of observing the [informant] enter a particular apartment (and not another apartment) to conduct the controlled buy -- in order to justify a conclusion that the [informant] in fact purchased drugs from the apartment unit the [informant] named." Id.

In the present case, the affidavit in support of the search warrant contained none of the details that would serve to corroborate the CI's report that it purchased drugs from a particular individual in apartment 2L, and did not explain why surveillance of the CI inside the apartment building would have been unreasonable.  Accordingly, the order allowing the motion to suppress is affirmed.

Order allowing motion to
suppress affirmed.

Mary E. Lee, Assistant District Attorney, for the Commonwealth.
David Rassoul Rangaviz for the defendant.