COMMONWEALTH vs. ANDRE WARREN.

Suffolk. April 5, 1994. - June 9, 1994.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & GREANEY, JJ.

*Probable Cause. Constitutional Law*, Search and seizure, Probable cause. *Search and Seizure*, Probable cause, Affidavit.

An affidavit provided probable cause for issuance of a search warrant for certain premises, where it set forth detailed information about the premises based on personal observations of a confidential informant and where the informant's credibility and the reliability of his information was demonstrated by his successful, police-supervised "controlled buy" of controlled substances at the premises. [89-91]

INDICTMENTS found and returned in the Superior Court Department on December 17, 1992.

A pretrial motion to suppress evidence was heard by *Maria I. Lopez*, J.

An application for leave to appeal was granted in the Supreme Judicial Court for the county of Suffolk by *Wilkins*, J., and the appeal was reported by him to the full court.

*Jane A. Sullivan*, Assistant District Attorney, for the Commonwealth.

*Leo McAuliffe* (*Roger Witkin* with him) for the defendant.

ABRAMS, J. The Commonwealth challenges an order of a Superior Court judge suppressing all evidence seized from the defendant, Andre Warren. A single justice of this court allowed the Commonwealth's application for leave to appeal and transferred the case to the full court. See Mass. R. Crim. P. 15 (b) (2), 378 Mass. 882 (1979), as amended, 397 Mass. 1226 (1986). We now reverse the order allowing the defendant's motion to suppress.

*Facts.* On December 8, 1992, Detective Sergeant Mark Vickers of the Boston police department filed an affidavit in support of an application for a search warrant. The affidavit provided the following information: Vickers stated that an anonymous informant told him that drugs and firearms were being kept in the second-floor apartment of a three-story, three-apartment building in Roxbury. The informant described the occupants of the apartment as the defendant and a woman named Marcia Gunn. The informant gave a physical description of both Gunn and the defendant, as well as background information relating to their family and employment status.

The informant told Vickers that the defendant had been selling cocaine for the last three months, since his release from Federal prison in New York. Vickers stated that, within the past five days, the informant was inside the defendant's apartment and observed a shoe box containing "cooked cocaine" and "powder cocaine." The informant said that the shoe box was located under a bed in the larger of two bedrooms, the bedroom shared by Gunn and the defendant. The informant saw two firearms concealed in the bedroom, inside the third drawer of the "tallest dresser." The informant described the firearms in detail.

Within seventy hours prior to his affidavit, Vickers arranged with the informant to make a "controlled buy" of drugs at the defendant's apartment. After confirming the informant had no money or drugs, Vickers then gave the informant money with instructions to buy cocaine at the second-floor apartment. Vickers observed the informant enter the apartment building, leave a short time later, and then walk directly to a prearranged meeting location. Vickers did not see the informant enter the apartment itself. At the meeting place, the informant handed to Vickers a package which tested positive for the presence of cocaine. The informant described the purchase of cocaine from the defendant inside the second-floor apartment. Vickers then confirmed with telephone directory assistance that Gunn lived at that address. He could not confirm the telephone number given to

him by the informant because Gunn's telephone number was unpublished.

Based on the information supplied by the informant, the controlled buy of cocaine, and the positive field test of the narcotics, Vickers requested a warrant to search the apartment for drugs, drug paraphernalia, and firearms. Vickers requested a no-knock search warrant to ensure the safety of all officers involved in the execution of the warrant, and to eliminate the likelihood that the suspects would have an opportunity to arm themselves in confronting the officers.

A magistrate issued a search warrant for cocaine, materials, and equipment used to distribute narcotics, and two firearms. The police executed the warrant, seized cocaine, marihuana, three firearms, a large amount of cash, and drug-related items. The defendant was arrested and charged with trafficking in cocaine, unlawful possession of marihuana with intent to distribute, and unlawful possession of firearms and ammunition. A Superior Court judge allowed the defendant's motion to suppress.ˋ

*Discussion.* We determine probable cause according to the principles developed under *Commonwealth* v. *Upton,* 394 Mass. 363 (1985), *Aguilar* v. *Texas,* 378 U.S. 108 (1964), and *Spinelli* v. *United States,* 393 U.S. 410 (1969). The Commonwealth must satisfy a two-pronged standard. Where information from an unidentified informant is relied on to supply probable cause to search, art. 14 of the Massachusetts Declaration of Rights requires that the affidavit apprise the magistrate of (1) some of the underlying circumstances from which the informant concluded that contraband was where he claimed it was (the basis of knowledge test), and (2) some of the underlying circumstances from which the affiant concluded that the informant was credible or the information reliable (the veracity test). *Commonwealth* v. *Upton,* *supra* at 375. *Commonwealth* v. *Parapar,* 404 Mass. 319, 321 (1989).

Each prong of the *Upton* standard, the basis of knowledge and the veracity of the informant, must be separately considered and satisfied. *Commonwealth* v. *Upton, supra* at 376.

*Commonwealth* v. *Blake*, 413 Mass. 823, 827 (1992). However, police corroboration of an informant's detailed tip can compensate for deficiencies in either or both prongs of the standard, and thus satisfy the art. 14 probable cause requirement. *Commonwealth* v. *Cast*, 407 Mass. 891, 896 (1990).

The defendant concedes that the basis of knowledge test is satisfied. The tip itself provides the informant's basis of knowledge. The informant personally observed drugs and firearms inside the apartment. See *Commonwealth* v. *Carrasco*, 405 Mass. 316, 321 (1989); *Commonwealth* v. *Borges*, 395 Mass. 788, 794-795 (1985).

Next we examine whether the veracity prong is satisfied. The affidavit did not contain any information from which the magistrate could conclude that the informant was credible. The affidavit did not state that the informant provided accurate information in the past as to seizures, pending cases, convictions, or other such information which would indicate reliability. See *Commonwealth* v. *Perez-Baez*, 410 Mass. 43, 45 (1991); *Commonwealth* v. *Valdez*, 402 Mass. 65, 71 (1988). See also *Commonwealth* v. *Rojas*, 403 Mass. 483, 486 (1988). The police had confirmed that Gunn lived in one of the apartments in the building. Cf. *Commonwealth* v. *Germain*, 396 Mass. 413, 418 (1985) (police corroborated defendant's address, prior record of similar crimes, and the fact that he had large amounts of cash, and was making cash purchases).

At issue is whether the police informant's "controlled buy," compensated for the deficiencies in the informant's reliability. A controlled purchase of narcotics, supervised by the police, provides probable cause to issue a search warrant. *Commonwealth* v. *Luna*, 410 Mass. 131, 134 (1991). In *Luna* and the other "controlled buy" cases, the police either have seen the informant enter the defendant's apartment or dwelling or have seen the informant and the defendant together at the time of the buy. See *Commonwealth* v. *Spano*, 414 Mass. 178, 182-184 (1993); *Commonwealth* v. *Blake*, 413 Mass. 823, 824 (1992). The difficulty with this "controlled buy" arises from the fact that the affiant did not ob-

serve the informant enter the particular apartment to make the "controlled buy."

The information provided in the affidavit regarding the "controlled buy" was as follows. Detective Vickers accompanied the informant to the building, and made sure the informant had no drugs or money before entering the building with three apartments. Detective Vickers watched the informant enter the building. A few moments later, Detective Vickers saw the informant walk directly to the prearranged meeting area. The informant described his purchase from Warren in the second-floor apartment, and handed over a package which tested positive for cocaine.

In supervising the "controlled buy," the police may consider the safety of the officers and the informant. The police were not required to risk disclosure of their surveillance by accompanying the informant to the second-floor apartment. *Commonwealth* v. *Carrasco*, 405 Mass. 316, 324-325 (1989). It is not fatal to the warrant application that police did not observe which of the three apartments the informant entered. Based on the information provided by the informant and their own observations, the police could infer that the defendant was dealing drugs from his second-floor apartment. See *Commonwealth* v. *Valdez*, *supra* at 71 n.4 (police surveillance of main entrance bolstered informant's credibility that contraband was stored in defendant's second-floor apartment). "We have held repeatedly that a magistrate should rely on '[r]easonable inferences and common knowledge . . . in determining probable cause.'" *Commonwealth* v. *Byfield*, 413 Mass. 426, 429-430 (1992), quoting *Commonwealth* v. *Alessio*, 377 Mass. 76, 82 (1979).

"Probable cause does not require a showing that the police had resolved all their doubts." *Commonwealth* v. *Olivares*, 30 Mass. App. Ct. 596, 598-599 (1991). "In dealing with probable cause . . . we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Commonwealth* v. *Hason*, 387 Mass. 169, 174 (1982), quoting *Brinegar* v. *United States*, 338 U.S. 160,

175 (1949). The informant provided detailed information based on personal observations. The information, combined with a "controlled buy" supervised by the police, which took the informant only a few moments to complete, was sufficient to satisfy the veracity prong of the *Upton* standard. See *Commonwealth* v. *Blake, supra* at 827-828.

The order allowing the defendant's motion to suppress is reversed and the case is remanded to the Superior Court for further proceedings.

*So ordered.*