Cowin, J.
Defendants Asternetta Robinson (“Robinson”) and Anthony Roxton (“Roxton”) seek to suppress evidence seized as a result of an alleged unlawful search by the Brockton and Massachusetts State Police. The search was conducted pursuant to a search warrant. Thewarrantwas executed on January 14, 1994 at the first-floor apartment of 17 Walnut Avenue, Brockton, Massachusetts (“the premises”).
Robinson and Roxton raise essentially the same arguments in support of their motions to suppress. They claim that the affidavit in support of the search warrant did not contain sufficient evidence to establish probable cause; the description of the premises was vague; the information in the affidavit was stale; and there was not enough evidence to support the issuance of a “no-knock” search warrant. The Court will address each of these contentions in turn.
DISCUSSION Probable cause
When an application for a warrant depends in significant part on information provided by a confidential informant, the affidavit must satisfy the two-pronged test set forth in Aguilar v. Texas, 378 U.S. 108 (1964), and Spinelli v. U.S., 393 U.S. 410 (1969), before a finding of probable cause can be made. Commonwealth v. Upton, 394 Mass. 363, 374 (1985). Under the Aguilar-Spinelli standard, the affidavit must “apprise the magistrate of (1) some of the underlying circumstances from which the informant concluded that contraband was where he claimed it was (the basis of knowledge test), and (2) some of the underlying circumstances from which the affiant concluded that the informant was credible or the information reliable (the veracity test).” Commonwealth v. Warren, 418 Mass. 86, 88-89 (1994). Each of the prongs must be satisfied independently, but “police corroboration of an informant’s detailed tip can compensate for deficiencies in either or both prongs of the standard, and thus satisfy the [Massachusetts Declaration of Rights] art. 14 probable cause requirement.” Id. at 89.
In the instant case, the police received information from two informants, “Cl” and “CRI.” Cl’s basis of knowledge is established because he personally observed cocaine sales. Cl told the affiant, Detective Michael Dadak of the Brockton Police, that he would enter the rear door of the premises and buy cocaine in plastic baggies from a black female. He further stated that a black male who also lived in the apartment had a gun and threatened to kill him if he were “five-O.” Cl’s reliability is less easily established. The affidavit does not show that Cl provided information in the past which led to the arrest and conviction of any named individuals or the seizure of contraband. However, the “controlled buy” of cocaine by CRI at the same address provides independent police corroboration which adequately compensates for any deficiency in ascertaining Cl’s credibility or reliability. See Commonwealth v. Warren, supra at 89.
The reliability of CRI is established by past tips which led to the arrests and convictions of named individuals for cocaine distribution and trafficking offenses. CRTs tips also led to the seizure of cocaine by undercover police officers. See Commonwealth v. Mejia, 411 Mass. 108 (1991); Commonwealth v. Lopez, 31 Mass.App.Ct. 547 (1991), review denied, 411 Mass. 1105 (1991). The affidavit does not describe CRTs basis of knowledge in the traditional manner. However, the controlled buy made by CRI is sufficient to compensate for the affidavit’s otherwise deficient showing as to CRTs basis of knowledge. See Commonwealth v. Tshudy, 34 Mass.App.Ct. 955, 956-57 (1993), review denied, 416 Mass. 1102 (1993).
Although the controlled buy in this case was not a model one, it appears to meet the minimum requirements for such a purchase. Generally, a controlled buy has at least the following components: (1) an officer meets the informant at a location other than the one where the suspected criminal activity is occurring; (2) the officer searches the informant to ensure he has no drugs on his person and usually gives the informant the money to buy drugs; (3) the officer escorts or follows the informant to the premises where it is alleged illegal activity is occurring and watches the informant enter and leave the premises; and (4) the informant turns over to the officer the substance the informant has purchased from the residents of the premises under surveillance. Commonwealth v. Warren, supra at 89-90.
In the instant case, the affiant watched CRI go to the premises, enter the rear entrance and come back out. He also observed CRI walk over to the officers’ vehicle and give them the crack cocaine. However, the affiant does not state that the informant was searched for drugs before entering the premises. A similar situation existed in Commonwealth v. Desper, 419 Mass. 163 (1994). In that case, the Court recognized that because the informant was not searched prior to the controlled buy it was possible that the informant came to the meeting with cocaine on his person. However, the Court reasoned that such an occurrence was not “at all probable.” Id. at 170. “In dealing probable cause .. . we deal with probabilities. These are not technical; they are factual and practical considerations of everyday life on which reasonable and prudent [persons] . . . act.” Id., quoting Commonwealth v. Hason, 387 Mass. 169, 174 (1982), quoting Brinegar v. United *299 States, 338 U.S. 160, 175 (1949). Furthermore, the possibility that the informant might have obtained the cocaine from another unit within the building does not necessarily taint the controlled buy. The police are not required to risk disclosure of their surveillance by observing which apartment in a small multi-unit building an informant actually enters in the course of executing a controlled buy. Based upon the information provided by the informant and their own observation of the informant entering the building, the officers may infer the truthfulness of the informant’s report that he entered the premises controlled by the suspect.[2]
Based upon the information provided by Detective Dadak, who stated that he had “been involved in over 200 arrests relating to narcotic arrests and investigations,” the magistrate who issued the warrant could reasonably conclude that the standards of Commonwealth v. Upton, supra, had been met and that probable cause existed to support the issuance of the search warrant.[3]
Specificity of the warrant
The defendants further argue that the description of the premises was vague. The description of the premises to be searched must be sufficiently detailed so that “the officer with the search warrant can with reasonable effort ascertain and identify the place intended.” Commonwealth v. Rugaber, 369 Mass. 765, 768 (1976). The affidavit refers to only 17 Walnut Avenue and the rear door entrance, leaving the impression that the building is a one-family dwelling. However, the application for the warrant describes the premises to be searched as the first floor of 17 Walnut Avenue, which “is a 2 story wood frame structure.” The application for the warrant may be read together with the warrant. See Commonwealth v. Vitello, 367 Mass. 224, 271-74 (1975). Thus, it appears that the building contains at least two units. An affidavit for a search warrant “must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion... [T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.” Commonwealth v. Germain, 396 Mass. 413, 418 (1985), quoting United States v. Ventresca, 380 U.S. 102, 108-09 (1965). Inter: preting these descriptions in a common sense fashion, the description is of a two-story, two-unit dwelling and a search was authorized for the first floor only.[4]
Furthermore, the knowledge of the executing officers may be considered in resolving noncrucial ambiguities in a warrant. See Commonwealth v. Treadwell, 402 Mass. 355, 359 (1988). When the affiant is involved in executing the warrant, he can be deemed to be aware of the limitations on the warrant. See Commonwealth v. Vitello, supra at 272. In the present case, Detective Dadak was the affiant, and he was also one of the officers who observed the controlled buy. The return filed with the warrant also indicates that Detective Dadak was the person who conducted the search. Thus, Detective Dadak may be deemed aware of the limitations on the warrant.
Finally, the identification of the possessor/occupant of the premises by name assists in the identification of the premises to be searched. See Commonwealth v. Walsh, 409 Mass. 642, 645, citing Commonwealth v. Rugaber, supra at 768 (detailed description of premises and identification of possessor/occupant by name and date of birth enough to overcome lack of street address). The application in this case states that the premises are occupied by and/or in the possession of a black female, Netta Robinson and a black male, Nate Robinson.
The search warrant in this case provided a sufficiently detailed description of the premises to be searched.
Staleness
The defendants also contend that the information contained in the affidavit was stale. Probable cause must be established by facts “closely related to the time of the iss(uance) of the warrant.” Commonwealth v. Fernandes, 30 Mass.App.Ct. 335, 342 (1991), quoting Commonwealth v. Reddington, 395 Mass. 315, 322 (1985). However, the standard for determining staleness is flexible. When the affidavit describes a continuing activity, as opposed to a single transaction, timing is of less significance. Commonwealth v. Wallace, 22 Mass.App.Ct. 247 (1986), review denied, 398 Mass. 1101 (1986).
The case of Commonwealth v. Fernandes, supra, is very similar to the present one. In Fernandes, the affidavit was executed on February 28, 1986. In January 1986, two confidential informants told the affiant that they had bought cocaine at the address in question for the past several months and that one of them had done so on January 10, 1986. Furthermore, within the seven days preceding the execution of the warrant, one of the informants had made a controlled buy of cocaine at that address. Finally, on many occasions during the six weeks prior to the execution of the warrant, the affiant had observed people going into the front door and leaving within five to ten minutes. In the present case, the affidavit states that in the end of December 1994, Cl told the affiant that he was buying cocaine from a black female at 17 Walnut Avenue. Using common sense, it can be inferred that these purchases had been fairly recent. Also, during the first week in January, the police supervised a controlled buy with CRI. Finally, sometime during the second week of January, the affiant observed “a lot of’ foot traffic to this address. During both the day and evening, people would enter the rear door and then leave within minutes. The warrant was issued on January 13, 1995. The information indicates an on-going, continuous activity that is as recent as that in Fernandes. The information regarding the sale of narcotics was not so stale as to suppose that the items sought would not be present at the execution of the warrant.
*300 No-Knock warrant
Finally, the defendants contend that the magistrate was not presented with sufficient facts to justify a “no-knock” warrant. To obtain a “no-knock” warrant, the police must state in the affidavit some particular reason to justify forceful entry without announcing their presence. Commonwealth v. Chausse, 30 Mass.App.Ct. 956 (1991), review denied, 410 Mass. 1103 (1991). One justification for dispensing with the “knock and announce” rule is that police have probable cause to believe that the evidence sought will be destroyed. However, it is not enough that the object of the search is amenable to ready disposal or destruction. Commonwealth v. Scalise, 387 Mass. 413, 421 (1982). The fact that the defendant, at a time close to the time of the search, was observed to be engaged in the retail sale of drugs, i.e. dealing with relatively small packages which were easily disposable, is a relevant factor. See Commonwealth v. Prunier, 33 Mass.App.Ct. 944 (1992), review denied, 414 Mass. 1101 (1992).
In the instant case, the occupants of the apartment were observed dealing in the retail drug trade. Both Cl and CRI bought drugs at that address. CRI bought a small quantity of crack cocaine for $20. Thus, the magistrate could reasonably infer that drugs purchased there were divided into small quantities, and were therefore easily disposable. See id. at 957.
A further justification for a “no-knock” warrant is circumstances in which the police have reason to fear for their own safety as well as the safety of others. Commonwealth v. Scalise, supra at 418. In the instant case, Cl told the affiant that when he bought the cocaine at the address in question, a black male who lived there put a gun to his head and threatened to kill him if he were “five-0.” Fear for the officers’ safety provided further grounds for the issuance of a “no-knock” warrant in this case. See Commonwealth v. Rodriguez, 415 Mass. 447, 451 (1993).
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendants’ motions to suppress are DENIED.

CRI did not explicitly state that he had entered the premises controlled by the suspect. However, it can be fairly inferred from the affidavit that he did so. See Commonwealth v. Jauier, 32 Mass.App.Ct. 988 (1992), review denied, 413 Mass. 1103 (1992).

The Commonwealth also argues that the officer’s observation of foot traffic entering and leaving the rear door of the premises helps satisfy the basis of knowledge requirement. However, in the absence of further detail as to the number of visitors and the length of their visits, the statement that a “lot of foot traffic” was observed entering and coining out “within minutes” does not tend to prove that a person or persons in the building are involved in criminal activity. Commonwealth v. Warren, supra at 167.

Even if this were a one-unit, two-story dwelling, the search authorized was only of the first floor and no rights would be violated. The search would be limited to one-half of the premises occupied by the same people.