## COMMONWEALTH *vs.* PASTOR PADILLA.

No. 95-P-1571.

Essex. September 19, 1996. - January 22, 1997.

Present: BROWN, DREBEN, & JACOBS, JJ.

*Search and Seizure,* Probable cause, Affidavit. *Constitutional Law,* Search and seizure, Probable cause, Admissions and confessions. *Probable Cause. Evidence,* Admissions and confessions. *Controlled Substances.*

An affidavit in support of a search warrant, on its face, provided sufficient indication of a confidential informant's basis of knowledge and his veracity and provided probable cause for the search of a certain apartment. [69-71]

In a criminal case, the defendant in effect waived the issue raised in a motion to suppress evidence by failing to call the judge's attention to the lack of a ruling on the motion. [71-72] BROWN, J., concurring.

In a criminal case, alleged misrepresentations in an affidavit in support of a search warrant were insufficient to require an *Amral* hearing (*Commonwealth* v. *Amral,* 407 Mass. 511 [1990]) and no substantial risk of a miscarriage of justice was created by the lack of such a hearing. [72-74] BROWN, J., concurring.

In a criminal case, the judge's findings supported her conclusion that the defendant knowingly waived his Miranda rights before making statements to police. [74]

Evidence at the trial of indictments alleging trafficking in narcotics was sufficient to support the conclusion that the defendant was, beyond a reasonable doubt, in constructive possession of the drugs. [74]

INDICTMENTS found and returned in the Superior Court Department on October 13, 1993.

A pretrial motion to suppress evidence was heard by *Joseph A. Grasso,* Jr., J., and the cases were tried before *Barbara J. Rouse,* J.

*Douglas J. Beaton* for the defendant.

*Susanne G. Levsen,* Special Assistant District Attorney, for the Commonwealth.

DREBEN, J. On August 21, 1993, officers of the Lawrence

police department executed a search warrant for the first-floor apartment of a three-family house at 150-152 Spruce Street in that city. After two of the officers found the defendant in the front bedroom of that apartment in the process of heat-sealing heroin packets, they arrested him. At first the defendant denied that there were other drugs in the apartment. After receiving Miranda warnings and being told that he should consider cooperating with the police, he talked to the other occupant of the apartment.[1] Thereafter he led the officers to the back bedroom, where more than eighty-nine grams of heroin were concealed in the ceiling.

Convicted of trafficking in more than 100 grams of heroin and more than fourteen grams of cocaine, the defendant appeals, claiming error: (1) in the denial of his motion to suppress the evidence seized in the apartment on the ground that the search warrant was issued without probable cause; (2) in the failure of the judge, in light of the suspect nature of the affidavit accompanying the search warrant, to give a *Franks*[2] or at least an *Amral*[3] hearing; (3) in the denial of his motion to suppress statements made by him at the scene of his arrest because he was given Miranda warnings in English and not in Spanish; and (4) in the denial of his motion for a required finding of not guilty of trafficking in heroin, insofar as the indictment was based on the drugs found concealed in the ceiling as there was insufficient evidence to connect him to those drugs. We affirm the convictions.

Prior to trial, the defendant filed a motion to suppress the evidence seized from the apartment on the ground that the affidavit in support of the warrant did not establish probable cause. After the motion was denied, the defendant filed another motion to suppress on the basis of *Franks* v. *Delaware*, 438 U.S. 154 (1978), and accompanied the motion with an affidavit of counsel asserting that, as a result of pretrial discovery,[4] counsel had obtained other affidavits supporting search warrants made by Detective Michael Laird, the police

---

[1] The other occupant was a woman who was charged as a codefendant. She was acquitted after a joint trial with the defendant.

[2] *Franks* v. *Delaware*, 438 U.S. 154 (1978).

[3] *Commonwealth* v. *Amral*, 407 Mass. 511 (1990).

[4] The Commonwealth does not claim, and the record does not indicate, that the defendant had these materials before filing his first motion to suppress. See Mass.R.Crim.P. 13(a)(2), 378 Mass. 871 (1979).

officer who submitted the affidavit which led to the search warrant for the present search of 150-152 Spruce Street. The motion claimed that Laird's affidavit supporting the Spruce Street warrant contained material misrepresentations of fact as to the reliability of the confidential informant which were either falsehoods or showed a reckless disregard of the truth on the part of the affiant. No action was taken upon this motion.[5]

The defendant argues that the motion required the judge to conduct a *Franks* hearing or at a minimum an in camera *Amral* hearing. Before considering the defendant's *Franks* argument and whether he may now raise it, we turn to the face of the affidavit because if, as the defendant contends, the affidavit is insufficient on its face to establish probable cause, the judge was in error in denying the defendant's first motion to suppress.

1. *Probable cause to conduct a search.* Dated August 20, 1993, the affidavit in support of the search warrant for 150-152 Spruce Street recounted Laird's experience with drug offenders, listed the occasions — of which more later — when a confidential informant referred to as CI 10 had assisted him, and other officers, in obtaining arrests and contraband, and related information obtained from an unidentified "citizen," set forth in part in the margin, which led Laird to call CI 10 on August 20 with the request that he come to the station.[6] After he arrived, Laird took CI 10 to a number of apartments to make controlled buys before bringing him to the area of 150-152 Spruce Street. After searching CI 10 and finding no drugs, Laird watched him enter that house by the rear door. CI 10 returned shortly and informed Laird that a Dominican male named Julio was there and had told him that he had no drugs at that time but that he should call

---

[5]The docket shows that the matter was continued. There are no further entries regarding the motion.

[6]On August 6, 1993, the "citizen," about whom Laird provided no information, informed him that large amounts of cocaine were being distributed from the first floor of 150-152 Spruce Street, that the main dealer was a Dominican male named Juan, that Juan worked with another Dominican named Luis, that the citizen had been in the apartment two days earlier and had seen a large amount of cocaine, that the drugs were kept in the bathroom, that the front door was barricaded, and that the password was "sent by Arismendi." On August 12, the citizen called Laird and gave him the telephone number of Juan's apartment.

later. Julio had given CI 10 a telephone number — the same number given to Laird previously, see note 6, *supra,* by the citizen. When CI 10 called forty-five minutes later, Julio stated that a friend named Luis would bring him the drugs in a blue Honda Accord automobile at a specified place, not revealed by Laird in order to protect the identity of CI 10. Laird drove CI 10 to the location and watched him enter a blue Honda Accord, with a New Hampshire license plate BGL-481, subsequently determined to be registered to Julian Quezada.

CI 10 returned to Laird's unmarked car with a plastic bag given him by Luis, which Laird, on a field test, determined to contain crack cocaine. Laird and CI 10 followed the Honda to 150-152 Spruce Street where Laird saw a male leave the car and enter the house.

To demonstrate the reliability of CI 10, whom Laird had known for approximately four months, Laird listed seven instances, set out in the margin,[7] in which CI 10 had provided information concerning criminal activity in the Lawrence area which had led to arrests and the seizure of contraband.

In order to satisfy art. 14 of the Massachusetts Declaration of Rights when there is reliance on a confidential informant to support a search warrant, the Commonwealth must, under *Commonwealth* v. *Upton,* 394 Mass. 363, 374-375 (1985), satisfy the two-pronged test of *Aguilar* v. *Texas,* 378 U.S. 108 (1964), and *Spinelli* v. *United States,* 393 U.S. 410 (1969); the affiant must apprise the magistrate of "(1) some of the underlying circumstances from which the informant concluded that contraband was where he claimed it was (the basis of knowledge test), and (2) some of the underlying circumstances from which the affiant concluded that the informant was credible or the information reliable (the veracity test)." *Commonwealth* v. *Warren,* 418 Mass. 86, 88 (1994). On the face of the affidavit, CI 10 was reliable as he had provided accurate information as to arrests and seizures. See *Commonwealth* v. *Perez-Baez,* 410 Mass. 43, 45-46 (1991). The veracity prong was thus satisfied.

---

[7]Laird alleged that CI 10 provided information leading to arrests and seizure of contraband at the following locations: (1) Capricornio Restaurant; (2) 85 Andover Street; (3) 98 Osgood Street; (4) 383 Lowell Street; (5) 311 Water Street; (6) 124 1/2 Franklin Street; as well as at (7) one unnamed location.

CI 10's discussion with Julio on August 20 indicated that drugs were or would soon be distributed from the apartment. The subsequent controlled buy by CI 10, supervised by the police, see *Commonwealth* v. *Warren*, 418 Mass. at 89, Laird's observation of the return of the blue Honda to 150-152 Spruce Street, and the entry in the house of the male (apparently the seller) were sufficient to satisfy the basis of knowledge test.[8] Although, as the defendant argues, the drug buy did not take place at the house, Julio's conversation with CI 10, coupled with the return to the house of the seller,[9] provided an adequate nexus between the drugs bought by CI 10 and 150-152 Spruce Street. See *Commonwealth* v. *Blake*, 413 Mass. 823, 829 (1992) (sufficient nexus between controlled drug buy and house where defendant told informant that he could deliver drugs the next day, and agents watched the defendant leave residence and drive to place where the drug buy was to take place). The affidavit on its face thus provided probable cause for the search of 150-152 Spruce Street.

2. *Right to an* Amral *or* Franks *hearing.* As indicated earlier, the defendant's motion to suppress on the basis of *Franks* v. *Delaware*, 438 U.S. 154, was never acted upon. Although immediately prior to trial, defense counsel — the same counsel who had filed the *Franks* motion and had executed the accompanying affidavit — asked the judge to act upon several motions, including a motion to suppress statements made by the defendant, he never requested action on the *Franks* motion. In these circumstances, we conclude that the defendant has in effect waived this issue by failing to call to the judge's attention the lack of a ruling on the motion. "If a motion is not acted upon a litigant had better renew it. He may not lull the judge into thinking that it has been

---

[8]While the citizen personally saw the drugs, the defendant correctly points out that the citizen's observation took place sixteen days prior to Laird's affidavit of August 20. Since drugs "are a readily disposable commodity," *Commonwealth* v. *Zayas*, 6 Mass. App. Ct. 931 (1978), the informant's information must be closely related to the time of the issuance of the warrant so as to justify a finding of probable cause at that time. *Commonwealth* v. *Atchue*, 393 Mass. 343, 349 (1984).

[9]That Laird did not see which apartment the seller entered is not crucial, see *Commonwealth* v. *Warren*, 418 Mass. at 90, nor is the fact that Laird did not state that he again searched CI 10 immediately before the buy. See *Commonwealth* v. *Desper*, 419 Mass. 163, 170 (1994). The defendant does not contend otherwise.

abandoned and then, after he has lost, pull a rabbit out of his pocket in the form of a forgotten motion." *United States* v. *Wilson*, 962 F.2d 621, 625 (7th Cir. 1992), quoting from *United States* v. *Taglia*, 922 F.2d 413, 416 (7th Cir.), cert. denied, 500 U.S. 927 (1991). See *Commonwealth* v. *Marsh*, 354 Mass. 713, 714 (1968).

Moreover, there was here no substantial risk of a miscarriage of justice. In *Franks*, the Supreme Court held that where a defendant "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." 438 U.S. at 155-156. Recognizing that in some instances a defendant may have difficulty in making the *Franks* threshold showing, the Supreme Judicial Court in *Commonwealth* v. *Amral*, 407 Mass. 511, 520 (1990), held that where a defendant "by affidavit asserts facts which cast a reasonable doubt on the veracity of material representations made ·by the affiant concerning a confidential informant," the judge should hold a hearing to enable him or her "through interrogating the affiant, and, if necessary, the informant to determine whether there is a substantial preliminary showing that the affiant has made false statements intentionally or recklessly." *Id*. at 522-523. Where the affiant has been merely negligent, however, there is no requirement for a *Franks* or an *Amral* hearing. See *Commonwealth* v. *Nine Hundred & Ninety-two Dollars*, 383 Mass. 764, 771, 772 (1981).

We turn to the defendant's claims of material misrepresentation. Laird's affidavit in this case, as we have discussed, see note 7, *supra*, listed seven instances showing the reliability of the confidential informant CI 10. The defendant, however, by attaching to counsel's affidavits other affidavits filed by Laird, has shown that Laird attributed the same information to another informant, CI 9. The discrepancies in Laird's affidavits are set out in the margin.[10] If as alleged in the Andover and Osgood affidavits, see note 10(a), *supra*, both CI 9 and CI 10

---

[10](a) In the supporting affidavits for two searches, at Andover Street and a related search at Osgood Street (#2 and #3 in note 7, *supra*), two informants, CI 9 and CI 10, were alleged to have each made a controlled buy and given information. Their reliability was indicated by both being

were instrumental in those arrests and seizures as well as those in the Capricornio Restaurant, then in subsequent affidavits involving only one of the two informants (either giving information or conducting a buy), there would be no need to mention the other informant. This, however, does not explain why the Franklin, Spruce, Granite, and Bradford affidavits, see note 10(d) & (e), *supra,* credit CI 10 with the information contained in the Lowell and Water Street affidavits, see note 10(b) & (c), *supra,* the only two affidavits which relied solely on CI 9.

We consider the foregoing facts insufficient to require an *Amral* hearing. Although the trial judge, had the motion been presented to her, could have, in her discretion, granted one, Laird's affidavits are insufficient to cast reasonable doubt on the existence of CI 10 or on the veracity of other material representations contained in the Spruce Street affidavit. True, they raise questions as to the accuracy of two of the credits given to CI 10. Nevertheless, a review of all the affidavits suggests that the error as to Lowell and Water Street arrests was due to carelessness and was at most negligent. Both CI 10 and CI 9 acted together in three instances (Capricornio Restaurant, Andover, and Osgood Streets) and thus Laird could easily have thought that both were involved also in the Lowell and Water Street incidents. That the misstatement was not intentional may be inferred from the fact that the Lowell and Water Streets arrests and seizures were unnecessary to prove CI 10's reliability in view of the many other listed occasions in which he had been of help. Moreover,

---

listed as having given information for the Capricornio Restaurant arrest and seizure (#1 in note 7).

(b) The Lowell Street affidavit, (#4 in note 7) relies only on CI 9 (who made a buy) and credits only him for the arrests and seizures at the Capricornio Restaurant, Andover Street, and Osgood Street.

(c) Similarly the Water Street affidavit (#5 in note 7) relies again only upon CI 9 (also a buy) and credits him with the arrests and seizures at the restaurant, and at Andover, Osgood, and Lowell Streets.

(d) The Franklin St. affidavit (#6 in note 7), which documents a buy by CI 10, credits him with the restaurant, Andover, Osgood, Lowell, and Water Streets arrests and seizures, although in the Lowell and Water Streets affidavits only CI 9, and not CI 10 had been mentioned.

(e) CI 10 is also credited with all seven arrests and seizures (stated in note 7, *supra*), as well as the arrest and seizure at Spruce Street in two Laird affidavits filed subsequent to the Spruce Street affidavit in support of search warrants for 9 Granite Street and 85 Bradford Street.

other information about both CI 9 and CI 10 was consistent throughout the Laird affidavits.[11] Laird's misattributions do not appear to sink to the level of making false statements "intentionally and recklessly." In any event, there was here no substantial risk of a miscarriage of justice.

3. *Denial of motion to suppress statements.* Immediately prior to trial, the trial judge held a hearing on this motion. She found that the defendant was given his Miranda rights and also found that he had "sufficient command of English to understand his rights and to waive them." The judge made comprehensive findings to support her conclusion based on the evidence at the hearing, which showed that the defendant had understood the rights and also that he had known Laird before and had had conversations in English with him.

4. *Sufficiency of the evidence.* The defendant points out that the drugs found in the ceiling were revealed to the detectives only after they had told him he was in serious trouble and only after his conversation in Spanish with the codefendant. Also, the drugs were found in the ceiling, not in the corner to which the defendant had pointed, but at the opposite end of the rear bedroom. These facts, the defendant argues, equally sustain two inconsistent propositions, namely, that he did not have knowledge of the location of the drugs and was first told of their existence by the codefendant, or that he knew of their location. In view of the evidence that the defendant was observed sealing bags of drugs — activities consistent only with their distribution — the jury were entitled to conclude that he was in constructive possession of the drugs hidden in the ceiling to which he had pointed. While the suggestion that he first learned of those drugs in his conversation with the codefendant, a disclosure which would have been to her serious disadvantage, is a possible one, the record as a whole supports a conclusion that the defendant was in constructive possession of those drugs and hence was guilty beyond a reasonable doubt. See *Commonwealth* v. *Carmenatty*, 37 Mass. App. Ct. 908, 910-911 (1994).

*Judgments affirmed.*

---

[11]The length of time Laird knew each of the informants as listed in the affidavits was consistent throughout and corresponded with the dates of the affidavits.

BROWN, J. (concurring). I concur, albeit reluctantly. It seems to me that if a picture painted by affidavits is cloudy, it is the responsibility of the motion judge — not this court — to puzzle out the situation. If *Commonwealth* v. *Amral*, 407 Mass. 511 (1990), stands for anything, it is a red flag for lower court judges at least to make a minimal exploratory inquiry.

Although I think the judge here should have conducted an *Amral* hearing, I concur because, apart from the probable waiver of such a hearing, as the majority points out, "there was here no substantial risk of a miscarriage of justice."