## Commonwealth *vs.* Diego Rodriguez
### (and a companion case[1]).

No. 99-P-291.

Worcester. April 13, 2000. - July 12, 2000.

Present: Porada, Gillerman, & Lenk, JJ.

*Constitutional Law,* Search and seizure, Probable cause. *Search and Seizure,* Affidavit, Probable cause, Warrant. *Probable Cause.*

Information in an affidavit in support of an application for a search warrant of an apartment, based on a confidential informant's single observation of an unspecified amount of heroin there three days earlier, was not stale when read with additional information in the affidavit, and was sufficient to establish probable cause for the search of the apartment [667-669], as well as a cellar or storage area to which the defendant had access through an adjacent apartment in the same building [669-670]; further, statements made to police by the defendant during the search were admissible in evidence [671].

Indictments found and returned in the Superior Court Department on May 5, 1998, and July 17, 1998, respectively.

Pretrial motions to suppress evidence were heard by *Martha B. Sosman,* J.

An application for an interlocutory appeal was allowed by *Neil L. Lynch,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

*Sandra P. Wysocki,* Assistant District Attorney, for the Commonwealth.

*Larry J. Colby* for Virginia Matias.

*Edward E. Eliot* for Diego Rodriguez.

Porada, J. The defendant was indicted for possession of cocaine with intent to distribute, second offense, and possession of cocaine with intent to distribute in a school zone. The

---

[1]Commonwealth *vs.* Virginia Matias.

defendant filed a motion to suppress all evidence seized from his apartment on the first floor of 90 Elm Street in Worcester and from the cellar associated with this apartment as well as all statements made by him during the execution of the search warrant.[2] A Superior Court judge allowed the motion to suppress all the evidence seized in the apartment on the grounds that the information furnished by a confidential informant, set forth in the affidavit in support of the issuance of the warrant, failed to satisfy the basis of knowledge prong of the standard by which probable cause for a search warrant based on information provided by a confidential informant is measured and that the information furnished by the informant was stale. The judge then held an evidentiary hearing to determine whether the search of the cellar was permissible as a warrantless search based on the Commonwealth's contention that the defendant lacked a reasonable expectation of privacy in the cellar of an apartment house available for use by all the tenants of the building, and whether certain statements made by the defendant during the execution of the warrant should be suppressed as "the fruit of the poisonous tree" of an illegal search. The judge determined that the search of the cellar and the statements made by the defendant were a by-product of the illegal search of the apartment and, thus, the evidence seized from the basement and the defendant's statements were suppressed. The Commonwealth filed a notice of an interlocutory appeal with a single justice of the Supreme Judicial Court, who allowed the Commonwealth to file this appeal. We reverse the judge's order allowing the motion to suppress the evidence seized from the apartment and cellar and statements made by the defendant during the execution of the search warrant.

The pertinent facts gleaned from the four corners of the affidavit and the judge's findings of fact are as follows. On October 22, 1997, Luis Baez, a Worcester police officer assigned to the vice squad, submitted an affidavit in support of an application for a search warrant for the first-floor apartment at 90 Elm Street, Worcester, and the cellar associated with this apartment "occupied by or in the possession of Diego Rodriguez." The purpose of the warrant was to seize heroin kept for sale on the stated premises and any materials, equipment, or documents relating to the distribution, delivery, processing, or manufacture of heroin on the stated premises. In

[2]Virginia Matias joined Rodriguez in his motion to suppress.

his affidavit, Baez averred that, on or about October 21, 1997, he had received information from a reliable confidential informant who had informed him that a Spanish male by the name of Diego was selling heroin and had been doing so "for sometime now." The informant told Baez that Diego resided in the first floor apartment at 90 Elm Street in Worcester. The informant also advised Baez that he "had been inside of 90 Elm St. first floor, Worcester, Ma. and had observed heroin in this apartment within the last forty eight hours." Baez also averred that his investigation disclosed that a man by the name of Diego Rodriguez lived at this address and that this man had a past criminal record for dealing in heroin.

The search warrant was issued and executed on October 22, 1997, the same date on which the application was made. At the time of its execution, the defendant was present in the apartment.[3] The police seized glassine packets, razor blades, ziplock baggies and $1,087 in cash in the search of the apartment. One of the baggies contained a white residue which later tested positive for heroin. In the search of the kitchen area of the apartment, the police found a large collection of keys. The keys had numbers on them indicating that some of them were for 92 Elm Street, as well as for 90 Elm Street. In response to inquiries from the police as to why he had so many keys, the defendant stated that he was the building manager. Upon further investigation, the police discovered that the cellar could not be entered from 90 Elm Street, but only through the front door of 92 Elm Street. The police asked the defendant for the keys to the front door of 92 Elm Street and the cellar. He identified the keys that opened those doors and gave them to the police. The police then entered 92 Elm Street through the front door with the key given to them by the defendant. The police proceeded to the cellar. The cellar door was locked. On the outside of the door was a sign indicating the laundry hours were "Mon & Thru & Sunday" until 9:00 P.M. The lettering at the bottom of the sign indicated that it was posted by the "Manager." The police entered the cellar with the key given to them by the defendant. The cellar contained a partitioned area consisting of a washer, dryer, and table. Also, the police observed the ongoing construction of a wall. In the insulation over the frame of a door being built into the wall, the police found a bag containing

---

[3]The defendant Matias was also present.

white powder, which they believed to be heroin, and thus seized it. The powder subsequently tested positive as 4.25 grams of cocaine. In the cellar, the police also found personal papers of the defendant, an electronic scale, and baggies. When the defendant was confronted by the police with the results of their search, he stated that anything that the police had found in the apartment was his and that his girlfriend, Matias, had nothing to do with it. He also denied ownership of the drugs found in the cellar but admitted that he had a drug habit and sold drugs "once in a while."

On appeal, the Commonwealth argues that the information set forth in the affidavit was sufficient to establish probable cause for the search of both the apartment and the cellar. The Commonwealth also argues that, even if the warrant was not sufficient to cover the cellar, the defendant did not have any reasonable expectation of privacy in the cellar.

In order to establish probable cause, an affidavit must contain sufficient information for an issuing magistrate to determine that the items sought are related to the criminal activity under investigation, and that the items reasonably may be expected to be located in the place to be searched at the time the warrant issues. *Commonwealth* v. *Cinelli*, 389 Mass. 197, 213, cert. denied, 464 U.S. 860 (1983). Probable cause can be established by information which comes from a confidential informant provided his veracity and basis of knowledge are established. *Commonwealth* v. *Upton*, 394 Mass. 363, 375 (1985).

At issue here is whether a confidential informant's single observation of an unspecified amount of heroin in the apartment was sufficient to establish the informant's basis of knowledge.[4] The defendant contended and the judge agreed that the informant's information lacked the specificity or detail necessary to satisfy the basis of knowledge prong for the criminal activity under investigation, the distribution of heroin. While it is true that the informant did not describe the quantity, packag-

---

[4] The judge's determination that the confidential informant was reliable is not in dispute in this appeal. Similarly, the judge's rulings that the information furnished by a second confidential informant or the alleged corroboration by the police of the informant's tip was not sufficient to cure any deficiency in the informant's basis of knowledge are not challenged in this appeal.

ing, or location of heroin in the apartment or the circumstances underlying his observation, such as the observation of a sale by either defendant to someone else, the absence of such details did not necessarily render the informant's information insufficient to satisfy the basis of knowledge prong. See *Commonwealth* v. *Warren*, 418 Mass. 86, 87, 89 (1994) (informant's statement that he was in the defendant's apartment in the past five days and observed a shoe box containing "cooked cocaine" and "powder cocaine" was sufficient to satisfy basis of knowledge test in drug trafficking investigation). It is well established that an informant's basis of knowledge may be satisfied simply by his or her personal observation of drugs in the place sought to be searched such as the defendant's apartment. *Commonwealth* v. *Valdez*, 402 Mass. 65, 70 (1988). *Commonwealth* v. *Warren*, 418 Mass. at 89. See *Commonwealth* v. *Borges*, 395 Mass. 788, 794-795 (1985). However, the informant's personal observation of drugs must occur at a time reasonably close to the issuance of the warrant for the magistrate to conclude that there is a reasonable likelihood that the drugs will be located in the place to be searched at the time the warrant issues. Thus, the more detail furnished by the informant about what he saw is significant in determining whether there is a reasonable likelihood that the drugs will be located in the place to be searched at the time the warrant issues.

Here, the judge concluded that the singular observation by the informant of an unspecified amount of heroin, which occurred at least three days prior to the issuance of the warrant, precluded the magistrate from concluding that there was a reasonable likelihood that the drugs would be located in the stated premises at the time the warrant issued. She reasoned that the unspecified amount of heroin observed by the informant may well have only been an amount for personal use, which in the passage of three days time could easily have been consumed. While it is true that drugs are a readily disposable commodity, *Commonwealth* v. *Padilla*, 42 Mass. App. Ct. 67, 71 n.8 (1997), and so the informant's personal observation of drugs must be reasonably close in time to the application for the warrant, *Commonwealth* v. *DiPietro*, 35 Mass. App. Ct. 638, 642 (1993), we believe that the issuing magistrate reasonably could have concluded that the drugs were still present at the time of the is-

suance of the warrant.

Assuming, as the judge properly did, that the observation was made on the most remote date described by the language contained in the affidavit, see *Commonwealth* v. *Rice*, 47 Mass. App. Ct. 586, 590 (1999), it would appear that the informant observed the heroin at least three days before the issuance of the warrant. If that were the only information from the informant contained in the affidavit about the defendant's drug activity, it might not have been unreasonable to conclude as the judge did that the information was stale. *Commonwealth* v. *Vynorius*, 369 Mass. 17, 25 (1975).

The informant's personal observation was, however, coupled with other information furnished by the informant recited in the affidavit, namely that the defendant "is selling" and "has been selling heroin for sometime now." That additional information indicated ongoing activity by the defendant which made the time of the informant's observation of the heroin in the apartment less significant. *Ibid.* Thus, reading the affidavit as a whole, together with the reasonable inferences that could be drawn by the magistrate from the information furnished by the informant, as we must, see *Commonwealth* v. *Blake*, 413 Mass. 823, 827 (1992), probable cause existed to search the apartment where the defendant resided. Cf. *Commonwealth* v. *Vynorius*, 369 Mass. at 23-25 (where the affidavit disclosed that a reliable informant had purchased marijuana three days before the request for the warrant from the defendant on the street in close proximity to the defendant's home and had done so on one other occasion on an unknown date, probable cause existed to search the defendant's home for marijuana). The search of the apartment pursuant to the warrant was valid.

The defendant also argues that, even if we were to conclude that the search of the apartment pursuant to the warrant was valid, the search of the cellar was not. Here the defendant points to the fact that access to the cellar was gained through 92 Elm Street, for which the police did not possess a warrant, and the defendant cannot be held to have consented to the search. Assuming that the defendant did not consent to the search, we conclude that the search of the cellar pursuant to the warrant was proper. The warrant authorized the police to search all cellars and storage areas associated with this apartment. While there was no averment in the affidavit that drugs had been

Mass. App. Ct. 664 (2000) observed in the cellar, none was required where probable cause to search the defendant's apartment under the warrant had been established. *Commonwealth* v. *Pacheco*, 21 Mass. App. Ct. 565, 567-569 (1986). The magistrate reasonably could infer that the objects for which the warrant had been issued could also easily be found in a cellar or storage area to which the defendant had access as well as within the confines of his apartment. *Id.* at 567.

While the defendant correctly asserts that the police did not possess a warrant for 92 Elm Street through which they gained access to the cellar, we do not believe that this fact invalidated the search. In order for a warrant to be valid it must particularly describe the place to be searched. *Commonwealth* v. *Carrasco*, 405 Mass. 316, 322-323 (1989). The test is "whether the description is sufficient to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premises might be mistakenly searched." *Commonwealth* v. *Rugaber*, 369 Mass. 765, 768 (1976). Here, there was uncontroverted evidence that the police did not know that the cellar associated with the defendant's apartment could only be accessed through 92 Elm Street, and there was no evidence that the police should have known that this was so. In addition, there was uncontroverted evidence that 90 and 92 Elm Street were contained within the same building. In light of the information available to the police at the time of the issuance of the warrant, the warrant was not invalid just because the police had to gain access to the cellar through the door at 92 Elm Street rather than 90 Elm Street. See *Commonwealth* v. *Burt*, 393 Mass. 703, 717-718 (1985) (warrant was valid even though it described the place to be searched as "a 3 story single family . . . building" when the building in actuality was a two-family residence and probable cause existed to search the second-floor apartment only); *Commonwealth* v. *Gonzalez*, 39 Mass. App. Ct. 472, 473, 477-478 (1995) (warrant was valid where the warrant authorized a search of 264 Tyler Street but the correct address was 126 Eastern Avenue where the two addresses constituted one building with two separate entrances and the police would not have known this to be so from their observation of the exterior of the building). In this case, where the affiant was the officer who executed the warrant, the description in the warrant was suf-

ficient to enable the executing officer to locate the cellar and there was no reasonable probability that another premises might be mistakenly searched. *Commonwealth* v. *Gonzalez*, 39 Mass. App. Ct. at 476-477. The warrant was sufficient to authorize a search of the cellar. In light of our decision, there is no need to address whether the search of the cellar without a warrant would have been proper based on the Commonwealth's claim that the defendant did not have a reasonable expectation of privacy in the cellar.

In sum, the order of the motion judge suppressing the evidence seized in the apartment and cellar and statements made by the defendant at the time of the execution of the warrant as a product of an illegal search is reversed, and the matter is remanded to the Superior Court for further proceedings.

*So ordered.*