Rufo, Robert C., J.
Defendant Leander Garrett (“Garrett”) was indicted for trafficking oxycodone following the seizure of evidence pursuant to a search warrant issued on April 2, 2009. Garrett now moves to suppress all evidence obtained from the search on the ground that the affidavit in support of the warrant fails to establish the reliability of the confidential informant. Garrett also contends that the affiant’s failure to test the alleged oxycodone prior to the issuance of the warrant negates probable cause and that evidence seized from his vehicle should be suppressed because that search was outside the warrant’s scope. For the following reasons, Garrett’s motion to suppress is DENIED.
FINDINGS OF FACT
On April 2, 2009, the Barnstable Police Department obtained a search warrant for Garrett’s residence, 33A Boardley Road in Sandwich, Massachusetts. The scope of the warrant extended to oxycodone, financial proceeds derived from the sale of oxycodone, weapons and documents identifying the occupants of 33A Boardley Road.
Barnstable Police Detective Lieutenant Sean Balcom (“Detective Balcom”) submitted an affidavit in support of the search warrant. Detective Balcom has been a police officer for twenty years, has received specialized narcotics training and has been involved in numerous narcotics investigations that have led to arrests and convictions. Detective Balcom’s affidavit relies on information from a confidential informant (“Cl”).
In February 2009, Cl informed Detective Balcom that Garrett sells oxycodone from a residence on Boardley Road and in various other locations. Cl stated that Garrett supplies oxycodone to users and *576 dealers in the Sandwich/Hyannis/Yarmouth area, that Garrett sells oxycodone (Percocet) tablets for $20-$30 in quantities ranging from a single pill to multiple pills, and that he/she had purchased oxycodone from Garrett (at 33A Boardley Road and other locations) on numerous occasions in the recent past. Cl also stated that Garrett routinely boasts of possessing large quantities of oxycodone and cash, and that he/she has observed Garrett at the Boardley Road residence in possession of hundreds of oxycodone tablets and thousands of dollars of cash. Cl further identified Garrett by photograph.
During the week of February 23, 2009, Cl made a controlled purchase of oxycodone from Garrett. On that day, Cl first made a controlled telephone call to Garrett to negotiate the purchase. Garrett advised Cl that he could conduct the transaction and instructed Cl to come to his Boardley Road residence. Prior to the purchase, Cl was searched for weapons, monies and contraband, and provided with monies the serial numbers of which had been recorded. Barnstable police followed Cl to Garrett’s Boardley Road residence and surveilled the purchase. Once there, Barnstable police observed Cl enter Garrett’s residence and, a short time later, exit and leave the area. Barnstable police then followed Cl to a prearranged location, where Cl handed over a plastic baggy containing a quantity of tablets inscribed “M 30.” Based on his training and experience, Detective Balcom identified the tablets as oxy-codone (30 milligram) tablets. Cl confirmed that the tablets were purchased from Garrett inside the Boardley Road address.
Cl made a second controlled purchase of oxycodone from Garrett at his Boardley Road residence during the week of March 9, 2009. Within forty-eight hours of applying for the search warrant, Cl made a third controlled purchase of oxycodone from Garrett at his Boardley Road residence. The circumstances underlying Cl’s second and third controlled purchases are essentially identical to the first controlled purchase.
Barnstable police arrested Garrett for trafficking oxycodone on April 2, 2009 at approximately 9:00 p.m. At the time of arrest, Garrett was walking to his vehicle, which was parked outside of his workplace. Barnstable police executed the search warrant for 33A Boardley Road on April 2, 2009 at 9:00 p.m. Among the items found were 163 oxycodone pills.
RULINGS OF LAW
An inquiry into the sufficiency of a search warrant “always begins and ends with the four corners of the affidavit.” Commonwealth v. O’Day, 440 Mass. 296, 297 (2003) (internal quotations omitted). The affidavit must contain sufficient factual information to establish that there is probable cause to believe that the evidence sought is related to the criminal activity under investigation and that such evidence may reasonably be expected to be found in the place to be searched. Commonwealth v. Cefalo, 381 Mass. 319, 328 (1980). Probable cause requires a showing of “facts which would warrant a man of reasonable caution in believing that certain action is appropriate.” Commonwealth v. Rivera, 27 Mass.App.Ct. 41, 45 (1989), citing Sullivan v. District Court of New Hampshire, 384 Mass. 736, 744 (1981). In reviewing a finding of probable cause, only facts revealed on the face of the affidavit and any reasonable inferences to be drawn from those facts may be considered. Commonwealth v. Allen, 406 Mass. 575, 578 (1990).
When an application for a warrant depends in significant part on information provided by a confidential informant, the affidavit must apprise the magistrate of (1) some of the underlying circumstances from which the informant concluded that contraband was where he claimed it was (the basis of knowledge test), and (2) some of the underlying circumstances from which the affiant concluded that the informant was credible or the information reliable (the veracity test). Commonwealth v. Upton, 394 Mass. 363, 375 (1985). Each test must be separately considered and satisfied. Upton, 394 Mass. at 376. “However, police corroboration of an informant’s detailed tip can compensate for deficiencies in either or both prongs of the standard, and thus satisfy the probable cause requirement.” Commonwealth v. Warren, 418 Mass. 86, 89 (1994), citing Commonwealth v. Cast, 407 Mass. 891, 896 (1990).
Garrett first contends that Detective Balcom’s affidavit, which relied largely on information supplied by Cl, failed to set forth sufficient facts to support a finding of probable cause. This court disagrees. According to the affidavit, Cl personally bought oxy-codone from Garrett at his Boardley Road residence on several occasions, the last of which occurred within forty-eight hours of the submission of the affidavit. Because Cl’s knowledge was based on personal observations, the basis of knowledge prong was satisfied. See Commonwealth v. Montanez, 410 Mass. 290, 299-300 (1991).
Detective Balcom’s affidavit did not contain any information from which the magistrate could conclude that Cl was credible. At issue then is whether Cl’s controlled purchases sufficiently established his reli-abiliiy. Several cases hold that a controlled purchase of narcotics, supervised by the police, provides probable cause to issue a search warrant. See Warren, 418 Mass. at 89-91 (1994); Commonwealth v. Luna, 410 Mass. 131, 134 (1991). I see no reason to depart from this law. Detective Balcom attested that, on three occasions, police searched Cl for drugs, and then followed him to Garrett’s residence where they observed him enter. In each instance, according to Detective Balcom, Cl exited the residence shortly after entering, traveled to a prearranged meeting area and handed over a baggy containing a quantity of tablets believed to be oxycodone. Cl then confirmed to police that the tablets were purchased from Garrett. These *577 three controlled purchases, along with the personal knowledge Cl provided to police, was sufficient to satisfy the veracity prong of the Upton standard. See Warren, 418 Mass. at 90-91.
Garrett next contends that, in the absence of submitting the alleged oxycodone tablets to narcotics testing, there can be no probable cause to issue a search warrant. Garrett cites no case that establishes this point of law. “Probable cause does not require a showing that the police had resolved all their doubts.” Commonwealth v. Olivares, 30 Mass.App.Ct. 596, 598-99 (1991). “In dealing with probable cause . .. we deal with probabilities. These are not technical, they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.” Commonwealth v. Hason, 387 Mass. 169, 174 (1982), quoting Brinegar v. United States, 338 U.S. 160, 175 (1949). “We have held repeatedly that a magistrate should rely on (r)easonable inferences and common knowledge ... in determining probable cause.” Commonwealth v. Byfield, 413 Mass. 426, 429-30 (1992) (internal quotations omitted).
Here, Detective Balcom identified the tablets as oxycodone. This determination was based on his training and experience. It is not fatal to the warrant application that the tablets were not tested. Detective Balcom’s sworn opinion, along with three controlled purchases, provided the magistrate with probable cause to believe that the tablets sold to Cl were oxycodone.
Garrett finally argues that evidence seized from his vehicle should be suppressed because that search was outside the warrant’s scope. The record before the court does not establish what, if anything, was seized from that search. It also does not indicate when Garrett’s vehicle was searched. In fact, there is no evidence indicating that the car was searched at all. Accordingly, Garrett has not sustained his burden of establishing that a search took place. See Commonwealth v. D’Onojrio, 396 Mass. 711, 714-15 (1986).
ORDER
For the forgoing reasons, Garrett’s motion to suppress is DENIED.